IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MIKE K. STRONG and MAUREENA J. STRONG,

                Plaintiffs,

vs.

RUSHMORE LOAN MANAGEMENT SERVICES, LLC, et al.,

                Defendants.

8:24-CV-352

MEMORANDUM AND ORDER

      The plaintiffs, Mike and Maureena Strong, are frequent fliers (or filers) with the Court. Their bevy of lawsuits relate to a property located in Gretna, Nebraska, and attempts by creditors to enforce a security interest in the property. This case is no different, although the Strongs allege that new wrongful acts purportedly occurred after the previous lawsuits terminated. *See* filing 5 at 3.

      There are four defendants this time: two related mortgage servicing companies, Rushmore Loan Management Services, LLC ("Rushmore Loan"), and Rushmore Servicing; a lawyer who represented those companies, Liliana Shannon; and Shannon's law firm, Southlaw, P.C. Shannon allegedly represented the Rushmore defendants during foreclosure proceedings in state court, and during one of the Strongs' bankruptcy proceedings. *See* filing 5 at 1. The defendants have jointly moved to dismiss. Filing 7; filing 12. The defendants have also asked this Court to sanction the Strongs and restrict their ability to file lawsuits in this Court related to the Gretna property. *See* filing 7 at 3.

I. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, the text of the plaintiff's complaint must contain enough factual allegations to nudge the plaintiff's claims "across the line from conceivable to plausible." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's claims are plausible if the facts alleged allow the Court to reasonably infer that the defendant could be held responsible for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Whether a plaintiff is represented or *pro se*, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

The Court will liberally construe *pro se* complaints, and these litigants are held to a lesser pleading standard. *Topchian v. JP Morgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014). If the essence of an allegation is discernible, although pleaded without "legal nicety," the Court will construe the complaint in a way that allows the claim to be evaluated within the proper legal framework. *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). While the Court must accept as true all facts pleaded by the *pro se* party, and grant all reasonable inferences in their favor, *see Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), determining whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents necessarily embraced by the pleadings include those whose contents are

alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). The Court may also take notice of public records, such as prior court proceedings. *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

## II. BACKGROUND

The following timeline is based on the facts in the Strongs' complaint, accepted as true for the purposes of the pending motions to dismiss, and the relevant state and bankruptcy court proceedings. *See* filing 5; *Levy*, 477 F.3d at 991.

- January 2021: Rushmore Loan, represented by Shannon and Southlaw, sued the Strongs in state court. *See* filing 7-1 at 25; case no. CI 21-2476 (Dist. Ct. of Sarpy Cnty, Neb.).

- July 2023: The state court entered judgment in favor of Rushmore Loan, ordering a judgment lien on the Gretna property. *See* filing 7-1 at 26. The Strongs moved the state court to vacate or set aside its judgment. *See* filing 7-1 at 29. That motion was promptly denied. Filing 7-1 at 29. The Strongs then appealed the judgment to the Nebraska Court of Appeals. Filing 7-1 at 32; *see* case no A-24-770 (Neb. Ct. App.).

- August 2023: The Strongs filed for bankruptcy, allegedly to prevent the imminent judicial foreclosure sale. Filing 5 at 3; case no. BK 23-80695 (Bankr. D. Neb.). In bankruptcy court, the

Strongs filed an adversary complaint against Rushmore Loan, Rushmore Servicing, and U.S. Bank. *See* case no. BK 23-8023 (Bankr. D. Neb.). Those defendants were jointly represented by Shannon and Southlaw. The Strongs sought declaratory judgment nullifying the state court Order of Sale. The bankruptcy court dismissed the adversary complaint with prejudice. *See* case no. BK 23-80695 (Bankr. D. Neb.).

- September 2023: Rushmore Loan transferred its interest in the Gretna property to Rushmore Servicing. Filing 5 at 19.

- January 2024: The Nebraska Court of Appeals issued its mandate dismissing the Strongs' appeal from the July 2023 summary judgment order. *See* filing 7-1 at 36; *see also Rushmore Loan Mgmt. Servs. LLC v. Strong*, 32 Neb. App. xiii, No. A-23-763 (summarily dismissing appeal for lack of jurisdiction).

- August 2024: The state court executed an order of sale of the Gretna property in favor of Rushmore Loan. Filing 5 at 15-17. The Strongs submitted an "Emergency Motion to Vacate Order of Sale," which was denied. The Strongs appealed, and that appeal is currently pending. *See* case no. A-24-877 (Neb. Ct. App.).

The Strongs allege that Shannon and Southlaw made false statements to the bankruptcy court regarding the relationship between Rushmore Loan and Rushmore Servicing, as well as purportedly misrepresenting the Strongs as "serial filers." Filing 5 at 6. They allege a litany of legal theories, including state-law torts like abuse of process and malicious prosecution, and violations

4

of statutes like the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. *See* filing 5 at 4-10.

The Strongs request compensatory and punitive damages, a declaration that the sheriff's sale was unlawful and void, reversal or annulment of the sheriff's sale, and restoration of the Strongs' rights and interest in the Gretna property. Filing 5 at 10-11.

### III. DISCUSSION
#### 1. MOTION TO JOIN AND DEFAULT JUDGMENT

Shannon and Southlaw seek to dismiss the claims against them based on both lack of jurisdiction and for failure to state a claim. Filing 7. The Rushmore defendants filed a "ditto" motion, and expressed that the legal arguments contained in the other defendants' brief were equally applicable to the claims against Rushmore. *See* filing 12. Citing nonexistent cases,[1] the Strongs assert that joining another party's motion without argumentation is insufficient. *See* filing 13 at 1.

It's true that the local rules require that a motion be supported by a brief filed and served together with a motion. NECivR 7.1(a)(1)(A). But a brief is not required if a motion raises no substantial issue of law and relief is in the Court's discretion. Rule 7.1(a)(1)(B). Here, the motion at issue requests that the Court apply the already-filed motion to dismiss to the Rushmore defendants. All of the defendants are jointly represented. The Court agrees with the Rushmore defendants that duplicative briefing on the same issues is unnecessary. *See* filing 12 at 1. The Court will consider the Rushmore

---

[1] The Court suspects that the Strongs utilized generative artificial intelligence in drafting their pleadings and briefs. This suspicion is discussed more below.

defendants under the legal arguments raised in the other defendants' motion to dismiss.

The Strongs have also moved for default judgment against Rushmore. *See* filing 11 (incorrectly filed as "Administrative Record"). But the Strongs have failed to comply with the procedural requirements to obtain such a judgment: They did not obtain a clerk's entry of default, nor did they submit an affidavit stating that the party against whom the default judgment is requested is not an infant or incompetent person. *See* NECivR 55.1(a); Fed. R. Civ. P. 55.

Nor does it seem that the Strongs could obtain the clerk's entry of default, anyway. While the summons for the allegedly-defaulted defendants was *issued* on September 25, 2024, the Strongs have not adduced any evidence that service was *executed* on that day. On the contrary, Rushmore has provided receipts that it was not served until October 7, 2024. Filing 16 at 3. Further, there is no way that the Strongs can show prejudice from relying on the "default." *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998). The motion for default judgment (filing 11) is denied.

## 2. STATE COURT JUDGMENT AND SHERIFF'S SALE

The Strongs request that this Court "vacate and set aside" a state court order issuing a sheriff's sale of the Gretna property. Filing 5 at 6. That order is currently under appeal. *See* case no. A-24-877 (Neb. Ct. App.). The Strongs further request that this Court restore the Strongs' interest in the Gretna property, apparently asking this Court to undo the state court's judgment in favor of the Rushmore defendants. Filing 5 at 10. But despite the Strongs'

assertions about jurisdiction,[2] there are a number of issues with litigation in federal court intended to "nullify" a state court order.

To start, a federal court lacks jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Shelby Cty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co.*, 855 F.3d 836, 840 (8th Cir. 2017) (the *Rooker-Feldman* doctrine); *see also* 28 U.S.C. § 1257. And a federal court must abstain when there is a parallel criminal prosecution, or particular state civil proceedings akin to a criminal prosecution, ongoing in a state court. *See Sprint Comm., Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) (*Younger* abstention). This would include civil enforcement proceedings, where a judgment creditor seeks to execute its rights. *See id.*; *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987).

Of course, just because a federal plaintiff raises the same or similar issues as decided in a state court proceeding does not mean dismissal or abstention are warranted. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005); *Sprint Comm.*, 571 U.S. at 77. Federal courts are obligated to exercise their jurisdiction . . . if they have it. A party that presents an *independent* claim, even one contrary to a state court's order, is able to pursue that claim in federal court.

But the Strongs don't present an independent claim regarding the allegedly "wrongful" sheriff's sale—the alleged damages, and the requested relief, flow directly from the state court's order. The Strongs contend that they do not "directly" challenge the state court's rulings. *See* filing 8 at 3. But that's

---

[2] The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

just nonsense, and contradictory to the relief they request. *See* filing 5 at 6. Moreover, that order is currently under appeal, based on alleged problems with standing that the Strongs presented to the state court. *See* filing 7-1 at 41. This Court cannot interfere with the state court's civil enforcement proceedings until they are fully resolved. *See Pennzoil Co.*, 481 U.S. at 17.[3] And to the extent the Strongs ask this Court to undo the Sarpy County District Court's July 2023 judgment, *that* claim is barred by *Rooker-Feldman*.

Notwithstanding *Rooker-Feldman* and *Younger*, the Strongs argue that the defendants perpetrated a fraud on the foreclosure court, violating federal criminal law. *See* filing 5 at 5; 18 U.S.C. § 152. But an alleged violation of a criminal law does not create a private cause of action. *See Oglala Sioux Tribe v. Schwarting*, 894 F. Supp. 2d 1195, 1200 (D. Neb. 2012) (collecting cases). And the Eighth Circuit has not recognized a fraud-on-the-court exception to *Rooker-Feldman*. *Fielder v. Cr. Acceptance Corp.*, 188 F.3d 1031, 1035-36 (8th Cir. 1999). The Court cannot take any action related to the state court's orders.

The Strongs also advanced the same claims, regarding the defendants' lack of standing and other deficiencies in the summary judgment order, to the bankruptcy court in an adversary proceeding. In the adversary proceeding, the Strongs sought declaratory judgment voiding the sheriff's sale and the state court's order. *See* case no. BK 23-8023 (Bankr. D. Neb.). The bankruptcy court dismissed the claims with prejudice. This dismissal implicates the doctrine of *res judicata*.

The bankruptcy court was a federal proceeding, so federal principles of *res judicata* apply. *Cf. Brown v. Kansas City Live, LLC*, 931 F.3d 712, 714 (8th

---

[3] And even once those proceedings resolve, any attack would be collateral; this Court has no authority to undo a state court judgment under these circumstances.

Cir. 2019). A plaintiff is precluded from relitigating any claims already pursued, or which might have been pursued in the earlier proceeding. *Lane v. Peterson,* 899 F.2d 737, 742 (8th Cir. 1990). The Court is barred from hearing claims if: (1) a prior judgment was rendered by a court of competent jurisdiction, (2) the prior judgment was a final judgment on the merits, and (3) the same cause of action and the same parties or their privies were involved in both cases. *Id.*

All of the elements are met here. The bankruptcy court judgment came from a competent court, and the judgment was on the merits. And the Rushmore defendants were parties to the adversary complaint. *Res judicata* does not preclude the Strongs from pursuing claims against Shannon and Southlaw—but the facts alleged related to those defendants appear to seek damages for alleged misleading statements made during the bankruptcy proceedings, and those allegations cannot support the requested relief to vacate or undo the state court orders. *Res judicata* precludes this Court's review of alleged deficiencies in the state court judgment.

Based on *Younger* abstention and the doctrines of *Rooker-Feldman* and *res judicata*, the Strongs are unable to pursue the claims intended to undo the state court's orders.

### 3. OTHER CLAIMS
#### (a) FDCPA

The Strongs assert that the defendants violated federal law by refusing to release a lien in response to a written request to do so. *See* filing 5 at 7. They additionally argue that the defendants misrepresented the relationship between the Rushmore defendants in bankruptcy court and in state court in order to collect the debt.

9

The FDCPA generally prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 694 (8th Cir. 2017). But the Eighth Circuit has not addressed whether foreclosure activities constitute debt collection under the FDCPA, and at least one court in this circuit has determined it does not. *See Gray v. Four Oak Court Ass'n, Inc.*, 580 F. Supp. 2d 883, 887 (D. Minn. 2008). There's a legal distinction between a "debt" and a security interest like a mortgage or a lien, and the FDCPA may not apply to the latter. *See id.*

Even if the FDCPA *did* apply, there's no basis to infer that the defendants violated the statute when they ignored a baseless letter from the Strongs requesting that the lien be released. The Court is further unpersuaded that the defendants' alleged representation that Mike Strong is a "serial filer" was false. While considering a motion to dismiss, the Court must accept the plaintiff's allegations as true. But the Court may take judicial notice of other lawsuits. This Court previously referred to Strong as a vexatious litigant. *See Strong v. Caliber Home Loans, Inc.*, No. 8:17-cv-485, 2018 WL 3321438, at *1 (D. Neb. July 5, 2018). Based on common sense and prior proceedings, *see Iqbal*, 556 U.S. at 679, the defendants' alleged statement was not false or misleading.

And the fact that Shannon and Southlaw referred to the Rushmore defendants' interest as harmonized during the foreclosure and bankruptcy proceeding cannot be characterized as misleading. As the defendants point out, under Nebraska law, "[i]n the case of any . . . transfer of interest, the action may be continued in the name of the original party." Filing 7-1 at 17 n.1 (citing Neb. Rev. Stat. § 25-322). There is no basis to infer that the defendants made false or misleading statements regarding the relationship between Rushmore

10

Loan and Rushmore Servicing. Rushmore Loan initiated the foreclosure action, and Nebraska law enables that original party to continue the lawsuit, even after a subsequent transfer of interest.

The Strongs seek to benefit from legal technicalities they simply don't understand. The FDCPA was intended to prevent abusive, deceptive, and unfair practices by debt collectors. § 1692. The Strongs' allegations fall far short of alleging any such practice, even drawing all inferences in their favor and liberally construing their complaint. A lawyer is obligated to zealously represent her client, and there's no indication that Shannon did anything but. The Strongs have failed to state a claim under the FDCPA.

(b) State Law Torts

Nor do the purported false or misleading statements state a claim for relief under any other tort under Nebraska law. The Strongs pled a variety of legal doctrines, citing inapplicable Nebraska statutes and cases. *See generally* filing 5. But it is the facts alleged, not the legal theories offered, which state a claim for relief. The Court has liberally construed the Strongs' complaint and has considered if any cause of action exists based on the facts alleged. The Strongs have failed to allege even an inference of wrongdoing on the part of any of the defendants.

Specifically, the Strongs pled a number of "counts" which don't reflect actual causes of action. These include: Count I, Wrongful Sheriff's Sale; Count II, Promoting Wrongful Sheriff's Sale and Misrepresenting Plaintiff as a Serial Filer; Count III, Failure to Release Lien; Count IV, Dereliction of Duty; and Count V, Damages for Credit and Reputation. *See* filing 5 at 4-9. But none of these are actually independent causes of action. Some of the "counts" contain

11

facts which might be considered as malicious prosecution or abuse of process, separately listed as "Count VI" and "Count VII."

But the facts alleged support neither a malicious prosecution nor an abuse of process claim. An essential element of malicious prosecution is that the proceedings must have terminated in the plaintiff's favor. *McKinney v. Okoye*, 842 N.W.2d 581, 591 (Neb. 2014). The Strongs cannot make such a showing here—they have lost every lawsuit in which the present defendants have been involved. Abuse of process is not a particularly well-developed tort under Nebraska law. *See Gordon v. Comm. First St. Bank*, 587 N.W.2d 343, 351 (Neb. 1998). But at a minimum, it requires a plaintiff to establish two elements: "the existence of an ulterior purpose and an act in the use of the process not proper in the regular prosecution of the proceeding." *Id*. The Strongs have not identified any ulterior motives or irregular process, or any facts that support even an inference of this element of their abuse of process claim.

"Dereliction of duty" might be construed as a claim for malpractice, or breach of a fiduciary duty. But the facts alleged appear to refer to Southlaw's failure to properly train or oversee Shannon, and are presented as a theory of why Southlaw should be legally responsible for Shannon's actions. It's a theory of liability, but is not a standalone legal theory to afford relief.

Nor can any of the facts alleged support a claim for malpractice or breach of a fiduciary duty. There's no indication that Shannon or Southlaw breached any duty, fiduciary or otherwise, owed to an adverse party in a foreclosure action. *See Sickler v. Kirby*, 805 N.W.2d 675, 691 (Neb. 2011) (starting point for determining an attorney's duty to a third party is whether the third party was an intended beneficiary of an attorney's service); *Miller v. Farmers and*

12

*Merchants Bank*, No. A-15-459, 2016 WL 2978594, at *4 (Neb. Ct. App. May 17, 2016) (no fiduciary relationship between a mortgagor and mortgagee).

Finally, there's no basis to infer that the defendants did anything wrong when they ignored the Strong's request to release the lien. The defendants are free to exercise their legal rights granted by the judgment in their favor, which includes legal action related to the judgment lien. The Strongs have failed to state a claim regarding the alleged "failure to release the lien" or the alleged failure to respond to the Strongs' letter regarding the lien.

### 4. UNSUPPORTED CLAIMS

To support their lacking legal theories, the Strongs cited to several cases the Court is unable to find. Strangely, while the case names the Strongs cite *exist*, the actual citation is completely different. For example, the Strongs cite *United States v. Bortnovsky*, 820 F.3d 572 (2d Cir. 2016), filing 13 at 1, but the appropriate case citation for that case name is (presumably) 683 F. Supp. 449 (S.D.N.Y. 1988), and the citation provided directs to *United States v. Tagliaferri*, 820 F.3d 568 (2d. Cir. 2016). And neither case supports the Strongs' purported legal proposition. While once might be a mistake, the Strongs' briefing has several similar errors (mismatched case names and citations irrelevant to the legal proposition purported).

The Court is highly suspicious that the Strongs utilized generative artificial intelligence in drafting their complaint and briefs, which is known to result in the sort of fictional or "hallucinatory" citations the Strongs provide. *See*, *e.g.*, *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023). The Strongs should take notice of the fact that such conduct, if repeated, could subject them to sanctions, even as *pro se* litigants. *See Rubio v. D.C.*, No. 23-cv-719, 2024 WL 4957373, at *4 (D.D.C. Dec. 3, 2024); *Vargas v. Salazar*, No.

4:23-CV-4267, 2024 WL 4804091, at *3 (S.D. Tex. Nov. 1, 2024); *Martin v. Hawai'i*, No. 24-cv-294, 2024 WL 3877013, at *2 (D. Haw. Aug. 20, 2024). Even *pro se* litigants are bound by Fed. R. Civ. P. 11(b), *see Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993), and citing imaginary law violates that rule, *see Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024).

And even if the Strongs' cited cases or statutes existed, or said what they are purported to say, the Strongs cannot survive the defendants' motion to dismiss. The Strongs are not permitted to shop around the same set of facts to different courts or judges in the hopes of getting a different answer. And there are no facts that support even an inference of wrongdoing on the part of the defendants. The present lawsuit is just another attempt to delay the inevitable legal outcome: removing the Strongs from their Gretna property. None of the Strongs' arguments indicate that they are entitled to remain in a home for which they have not paid.

## IV. SANCTIONS

It's clear the Strongs are uninterested in ceasing their malicious and vexatious litigation. The defendants have requested that this Court sanction the Strongs to prevent them from filing more meritless lawsuits.[4] A district court is vested with discretion to impose sanctions upon a party under its inherent disciplinary power. *Bass v. Gen. Motors Corp.*, 150 F.3d 842, 851 (8th Cir. 1998). But there is a strong policy against depriving a party of his day in

---

[4] That said, it's unclear to the Court how, exactly, the Strongs are still residing in the Gretna property. *See* filing 7-1 at 2. The defendants represented that the lender purchased the property at a judicial foreclosure sale. *See* filing 7-1 at 11. It's unclear if the defendants have attempted to remove the Strongs from the property. Sanctions are likely unwarranted if these or future defendants fail to demonstrate sufficient efforts to exercise their rights.

court. *Id.* A party's affinity for litigation, standing alone, does not provide a sufficient reason for filing restrictions. *Ruderer v. U.S.*, 462 F.2d 897, 899 (8th Cir. 1972).

That said, if a court determines that a party is acting in bad faith, or if a party has already been afforded a full opportunity to present his claims and further suits on these claims would uselessly consume the Court's time, filing restrictions may be appropriate. *See id.*; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Such restrictions must be narrowly tailored to afford a party the right to access the courts. *See Bass*, 150 F.3d at 851; *Van Deelen v. City of Kansas City*, 262 Fed. App'x 723, 724 (8th Cir. 2007).

*At this point* . . . the Court will not impose filing restrictions on the Strongs. However, if they continue to pursue claims with the intent to delay, hinder, or harass those attempting to exercise their legal rights with regard to the Gretna property, this Court will *strongly* consider both monetary sanctions and narrowly-tailored filing restrictions. *See Chambers*, 501 U.S. at 45.

Accordingly,

IT IS ORDERED:

1. Shannon and Southlaw's motion to dismiss and for sanctions (filing 7) is granted in part.

2. Rushmore Loan and Rushmore Servicing's motion to join the motion to dismiss (filing 12) is granted.

3. The Strongs' motion for default judgment (filing 11) is denied.

15

4. The Strongs' complaint is dismissed in its entirety.

5. A separate judgment will be entered.

Dated this 15th day of January, 2025.

                BY THE COURT:

                *John M. Gerrard*
                John M. Gerrard
                Senior United States District Judge